IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. DKC 13-0550 |
| | : | |
| SAMUEL ROBERT HOSFORD | : | |
| | : | |

**MEMORANDUM OPINION**

## I.  Background

Samuel Robert Hosford ("Defendant" or "Mr. Hosford") and an alleged co-conspirator are charged in a six-count indictment with conspiracy in violation of 18 U.S.C. § 371 (count one) and unlicensed dealing in firearms in violation of 18 U.S.C. § 922(a)(1)(A) (counts two through six).  (ECF No. 1).  As alleged in the indictment, between June 2013 and August 2013, Mr. Hosford conspired knowingly and willfully with Henry Lee Parrott and others to engage in the business of dealing in firearms without being a licensed dealer in violation of 18 U.S.C. § 922(a)(1)(A).  The indictment alleges that as part of the conspiracy, Mr. Hosford arranged for the sale of firearms that his alleged co-conspirator provided to him.  (Count One ¶ 4). Defendant allegedly contacted "Person A" by telephone or text message to select a time and location where Mr. Hosford would deliver firearms to "Person A" in exchange for U.S. currency.

(*Id.* ¶ 6).   Prior to each meeting with "Person A," Mr. Hosford met with his alleged co-conspirator at which time the co-conspirator delivered to Defendant the firearms to be sold. (*Id.* ¶ 7).   In addition, according to the indictment, on five occasions from June 5 through August 30, 2013, Defendant knowingly and willfully engaged in the business of dealing in firearms without having a license as an importer, manufacturer, and dealer in firearms.   (Counts Two through Six).

Defendant now moves to dismiss the indictment on three grounds: (1) 18 U.S.C. § 922(a)(1)(A) and 18 U.S.C. § 921(a)(21)(C) are unconstitutional because they infringe on his Second Amendment right; (2) Sections 922(a)(1)(A) and 921(a)(21)(C) are unconstitutionally vague on their face and as applied to him; and (3) Section 922(a)(1)(A) exceeds the scope of Congress's authority under the Commerce Clause by regulating intrastate activity without a substantial connection to interstate commerce.   A hearing was held on November 19, 2014. For the following reasons, the motion will be denied.

## II.  Analysis

Section 922(a)(1)(A) states that it shall be unlawful for any person:

> except a licensed importer, licensed manufacturer, or licensed dealer to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive

2

> any firearm in interstate or foreign commerce.

Section 921 defines the terms "licensed dealer," "importer," and "manufacturer."   Section 921(a)(21)(C) defines "engaged in the business":

> as applied to a dealer in firearms, as defined in section 921(a)(11)(A), a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but such term shall *not* include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms.

## A.   Second Amendment Challenge

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."   U.S. Const.amend.II.   In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the United States Supreme Court held that the right to keep and bear arms, as provided in the Second Amendment, is an individual right without regard to militia service.[1]   According to the Supreme Court, the core right of the Second Amendment is "the right of law-abiding, responsible citizens to use arms in

---

[1]   After *Heller*, the United States Supreme Court issued *McDonald v. City of Chicago*, 561 U.S. 742 (2010).   *McDonald* held that the Second Amendment right recognized in *Heller* is fully applicable to the states.

defense of hearth and home." *Heller*, 554 U.S. at 635; *United States v. Staten*, 666 F.3d 154, 158 (4th Cir. 2011). The Supreme Court noted in *Heller* that its holding did not invalidate "presumptively lawful regulatory measures":

> [N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, *or laws imposing conditions and qualifications on the commercial sale of firearms.*

(emphasis added).[2]

Defendant argues, based on *Heller,* that the right to "keep and bear arms" is not limited to keeping arms within the home for self-defense. He contends that "[w]ithout the ability to acquire firearms, or to dispose of them through sale (as one would any other lawfully-owned property), the right to keep and bear arms would be hollow indeed." (ECF No. 39, at 13).[3] He then argues that the restrictions in the statute under which he is charged violate those rights. The Government counters that Defendant's Second Amendment challenge fails for two reasons: (1) the challenged statutes are "presumptively lawful regulatory measures" that impose conditions and qualifications on the

---

[2] The Supreme Court in *Heller* explained that the list of "presumptively lawful regulatory measures" was merely exemplary and not exhaustive.

[3] ECF references are to the page numbers designated by that system.

commercial sale of arms, but do not prohibit sales outright; and (2) even applying intermediate scrutiny to the challenged statutes, they are constitutional because they are substantially related to an important government objective. (ECF No. 45, at 9-10).

In *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010), the Fourth Circuit set forth a two-part approach to reviewing Second Amendment challenges:

> The first question is "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." [] This historical inquiry seeks to determine whether the conduct at issue was understood to be within the scope of the right at the time of ratification. *See Heller*, 128 S.Ct. at 2816. If it was not, then the challenged law is valid. [] If the challenged regulation burdens conduct that was within the scope of the Second Amendment as historically understood, then we move to the second step of applying an appropriate form of means-end scrutiny. [] *Heller* left open the issue of the standard of review, rejecting only rational-basis review. Accordingly, unless the conduct at issue is not protected by the Second Amendment at all, the Government bears the burden of justifying the constitutional validity of the law.

### 1. Conduct Falling Within Scope of Second Amendment

Defendant argues that the conduct implicated in this case falls within the scope of the Second Amendment because there must be some method for purchasing and selling firearms in order

to preserve the right to possess them for self-defense within the home.  The Government, for its part, argues that the conduct is outside the scope of the Second Amendment based on the plain text that does not refer to the sale of arms and the Fourth Circuit's unpublished decision in *United States v. Chafin*, 423 F.App'x 342, 344 (4th Cir. 2011), in which it stated that it is aware of no authority "that remotely suggests that, at the time of its ratification, the Second Amendment was understood to protect an individual's right to *sell* a firearm." (emphasis in original).  Defendant criticizes the statement in *Chafin* as incorrect and cites to a law review article, David B. Kopel, *Does the Second Amendment Protect Firearms Commerce?,* 127 Harv. L. Rev. F. 230 (Apr. 11, 2014).  Neither party has attempted to provide comprehensive evidence of the state of the law at the time of ratification concerning the commercial sale of firearms. Nor has any party explicitly articulated which side bears the burden of persuasion at the first step.

The Sixth Circuit explicitly places the burden on the government to prove that conduct falls outside the protection of the Second Amendment.  *Tyler v. Hillsdale Cnty. Sheriff's Dep't*, No. 13-1876, 2014 WL 7181334 (6th Cir. Dec. 18, 2014) (referring to *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012)). The Fourth Circuit does not appear to have expressly stated whose burden it is at the first step.  Moreover, the Fourth

6

Circuit (along with many courts) has repeatedly assumed Second Amendment application and proceeded to the second step. That approach makes sense here, where it is difficult to discern exactly how to define the right under consideration, or the right included within the Second Amendment. Here, of course, the statutes only regulate the commercial sale of firearms by requiring a license, and do not prohibit such sales. As will be seen, ultimately in this case, the dividing line need not be precisely delineated. Either the Second Amendment does not encompass the unregulated commercial sale of firearms, or even if the right should be defined as the sale or exchange of firearms and is protected, then, the regulation here withstands the appropriate level of scrutiny.

### 2. Means-End Scrutiny

Even assuming that some form of commercial sale of firearms is encompassed within the Second Amendment and, thus, that Sections 922(a)(1)(A) and 921(a)(21)(C) regulate conduct within the scope of the Second Amendment, traditional means-end scrutiny confirms that the statutes are constitutional.

The first issue is which level of scrutiny to apply to Sections 922(a)(1)(A) and 922(a)(21)(C). In *Heller*, the Supreme Court acknowledged that rational-basis scrutiny would be inappropriate, but it declined to choose the proper level of review for Second Amendment challenges. Defendant urges the

court to apply strict scrutiny because it characterizes the conduct at issue as a core Second Amendment value. Specifically, Defendant contends that "[i]n this type of case, with the imposition of substantial criminal penalties for the exercise of core protected conduct, strict scrutiny is required." (ECF No. 39, at 14). The Government argues that intermediate scrutiny should be applied.

Defendant's arguments as to why strict scrutiny should apply are unavailing. "Strict scrutiny does not apply automatically any time an enumerated right is involved." *United States v. Marzzarella*, 614 F.3d 85, 96 (3$^{\text{d}}$ Cir. 2010); *Chester*, 628 F.3d at 682 (same). A regulation that threatens a right at the core of the Second Amendment – for example, the right of a law-abiding, responsible adult to possess and use a handgun to defend his home and family, *see Heller*, 554 U.S. at 635 – triggers strict scrutiny. *United States v. Masciandaro*, 638 F.3d 458, 470 (4th Cir. 2011); *Chester*, 628 F.3d at 682. "A less severe regulation – a regulation that does not encroach on the core of the Second Amendment – requires a less demanding means-ends showing. [] This more lenient level of scrutiny could be called 'intermediate' scrutiny, but regardless of the label, this level requires the government to demonstrate a 'reasonable fit' between the challenged regulation and an 'important' government objective." *Nat'l Rifle Ass'n of Am., Inc. v. Bureau*

*of Alcohol, Tobacco*, 700 F.3d 185, 195 (5th Cir. 2012);
*Masciandaro*, 638 F. 3d at 471 (stating that intermediate
scrutiny requires the government to demonstrate that the
regulation is "reasonably adapted to a substantial governmental
interest").

In *Chester*, 628 F.3d at 677, the Fourth Circuit held that
intermediate scrutiny should be applied when reviewing a Second
Amendment challenge to 18 U.S.C. § 922(g)(9), which prohibits
the possession of firearms by a person convicted of a
misdemeanor crime of domestic violence.   The court stated in
*Chester*:

> The Second Amendment is no more susceptible
> to a one-size-fits-all standard of review
> than any other constitutional right.   Gun-
> control regulations impose varying degrees
> of burden on Second Amendment rights, and
> individual assertions of the right will come
> in many forms.   A severe burden on the core
> Second Amendment right of armed self-defense
> should require strong justification.   *But
> less severe burdens on the right, laws that
> merely regulate rather than restrict, and
> laws that do not implicate the central self-
> defense concern of the Second Amendment, may
> be more easily justified.*

(emphasis added); *Kachalsky v. Cnty. of Westchester*, 701 F.3d
81, 93-96 (2[d] Cir. 2012) (holding intermediate scrutiny is
appropriate where a firearm regulation does not burden the core
protection of self-defense in the home); *Kolbe v. O'Malley*, ---
F.Supp.2d ----, 2014 WL 4243633, at *13 (D.Md. Aug. 22, 2014)

("[T]he court finds intermediate scrutiny is appropriate for assessing the constitutionality of Maryland's ban because it does not seriously impact a person's ability to defend himself in the home, the Second Amendment's core protection.  It does not ban the quintessential weapon – the handgun – used for self-defense in the home.  Nor does it prevent an individual from keeping a suitable weapon for protection in the home."); *Colorado Outfitters Ass'n v. Hickenlooper*, 24 F.Supp.3d 1050, 2014 WL 3058518, at *15 (D.Colo. 2014) ("[T]he Court finds that although § 18-12-302 burdens the operation of semiautomatic weapons, the burden is not severe because it does not materially reduce the ability of a person to use a semiautomatic firearm for self-defense, nor does it reduce the effectiveness of self-defensive efforts.  As a result, the Court will examine the statute under the intermediate scrutiny test.").  Accordingly, intermediate scrutiny applies to the challenged statutes here.

To survive intermediate scrutiny, the Government must demonstrate that the laws at issue are "reasonably adapted to a substantial governmental interest." *Masciandaro*, 638 F.3d at 471; *Chester*, 628 F.3d at 683 (holding the government must demonstrate that there is a "reasonable fit" between the law at issue and the government's substantial interest).  Intermediate scrutiny "does not require that a regulation be the least intrusive means of achieving the relevant government objective,

or that there be no burden whatsoever on the individual right in question." *Masciandaro*, 638 F.3d at 474. The Fourth Circuit has held that "the Constitution does not mandate a specific method by which the government must satisfy its burden under heightened judicial scrutiny," and that the government "may resort to a wide range of sources, such as legislative text and history, empirical evidence, case law, and common sense." *United States v. Carter*, 669 F.3d 411, 418 (4th Cir. 2012).

Defendant argues that under either strict or intermediate review, "Mr. Hosford's challenge cannot withstand constitutional review" because "the acquisition and sale of firearms by non-prohibited persons are part and parcel of the right to keep and bear arms, and thus fall within the core of Second Amendment rights." (ECF No. 39, at 18-19). Defendant recognizes that "there are certainly legitimate government interests relating to the licensing of firearm dealers, and measures intended to prevent prohibited persons from obtaining firearms," but believes that these interests are captured in other aspects of the law. (*Id.* at 19).[4]

The Government argues that its interest in preventing crime and assisting states in regulating firearms traffic is substantial. Congress enacted 18 U.S.C. § 922 as part of the

---

[4] The "other" sections of the law that Defendant cites as already protecting the Government's substantial interest are 18 U.S.C. §§ 923, 922(m), 922(d), 922(x)(1), and 922(a)(6).

Gun Control Act of 1968 "to strengthen Federal controls over interstate and foreign commerce in firearms and to assist the States effectively to regulate firearms traffic within their borders."   H.R. Rep. No. 90-1577, at 6 (1968).   "[C]lose scrutiny of [interstate traffic in firearms] is undeniably of central importance to federal efforts to prevent violent crime and to assist the States in regulating the firearms traffic within their borders." *United States v. Biswell*, 406 U.S. 311, 315 (1972).   "One of the mechanisms for doing so was a requirement that interstate transfers of firearms take place through federal firearms licensees ("FFLs")." *Lane v. Holder*, 703 F.3d 668, 670 (4th Cir. 2012) (referencing 18 U.S.C. § 922(a)(1)-(5)).   As the Government points out, "Sections 922(a)(1)(A) and 921(a)(21)(C) are critical components of that dealer-focused regulatory scheme.   Section 922(a)(1)(A) ensures that significant commercial traffic in firearms will be conducted only by parties licensed by the federal government." (ECF No. 45, at 19); *see, e.g., United States v. Nowka*, No. 5:11-cr-00474-VEH-HGD, 2012 WL 2862061, at *6 (N.D.Ala. May 10, 2012) ("Sections 922(a)(1)(A) and (a)(5) require dealers in firearms to obtain a federal license; they do not prohibit or restrict the law-abiding citizen's right to possess firearms in his home for self-defense.   The burden imposed by the law does not severely limit the possession of firearms.").   The United

States Supreme Court has recognized the "legitimate and compelling state interest in protecting the community from crime." *Schall v. Martin*, 467 U.S. 253, 264 (1984) (internal quotations omitted). In *Huddleston v. United States*, 415 U.S. 814, 825 (1974), the Court noted that "the focus of the federal scheme is the *federally licensed firearms dealer*, at least insofar as the Act directly controls access to weapons by users. Firearms are channeled through dealers to eliminate the mail order and the generally widespread commerce in them, and to insure that, in the course of sales or other dispositions by these dealers, weapons could not be obtained by individuals whose possession of them would be contrary to the public interest." (emphasis added). Thus, by regulating firearms dealers, it furthers the Government's substantial interest in protecting the community.

Nor is the licensing requirement onerous. Neither party discusses 18 U.S.C. § 923, which sets forth provisions for obtaining a firearm license.[5] To obtain a federal firearms license, an individual must: complete an application (ATF Form 7); pay a fee to obtain a license; and establish premises from which the individual conducts business. *See* 18 U.S.C. §§ 923(a), 923 (a)(3)(B), 923(d)(1)(E)(i), 923(d)(1)(F)(i)-(ii).

---

[5] The implementing regulations under 18 U.S.C. § 923 are contained in 27 C.F.R. Part 478.

Notably, Defendant does not argue that he applied for a license and it was denied under circumstances constituting a denial of protected rights. Section 922(a)(1)(A) does not prevent a non-prohibited person from selling a non-prohibited firearm; it merely requires a license to do so. *See, e.g., Hickenlooper*, 2014 WL 3058518, at *18 ("[Section 18-12-112] does not prevent a person otherwise permitted to obtain a firearm from acquiring one, nor subject that person to any greater burdens than he or she would face if acquiring the weapon commercially. Nothing in the Second Amendment can be read to suggest that a permissible burden on commercial sales of firearms cannot be similarly extended to apply to those acquiring firearms by loan.").

The Government has carried its burden here. Defendant's belief that the important government interest in regulating firearm sales is captured in other aspects of the law does not undermine the constitutionality of the two statutes at issue here. *Nowka*, 2012 WL 2862061, at *8 ("[Section 922(a)(1) is] substantially related to the governmental objectives of preventing violent crime and assisting the States in regulating the firearms traffic within their borders. Thus, the challenged statutes pass intermediate scrutiny and are not unconstitutional."); *Hickenlooper*, 2014 WL 3058518, at *19 ("The Court finds that the General Assembly used reasoned analysis in concluding that it was necessary and beneficial to require

14

background checks for private transfers of firearms to help prevent crime and improve public safety, both important governmental interests.").

Alternatively, Defendant proposes that "[r]ather than declaring Sections 922(a)(1)(A) and 921(a)(21)(C) unconstitutional as applied, the Court can construe those statutes in such a way as to render them constitutional. If those provisions are construed so as not to apply to the constitutionally protected conduct in this case, as they clearly should not, the Court can avoid finding them unconstitutional." (ECF No. 39, at 16). Because the statutes at issue are constitutional, this argument is unavailing. During the hearing, Defendant suggested that the court construe Section 922(a)(1)(A) as not applying to occasional sales, which Defendant believes he engaged in. The statute applies to those engaged in the business of dealing in firearms, conduct with which Defendant is charged in the indictment.

Defendant suggests two additional alternatives to ruling on the constitutionality of the statutes at issue: (1) defer ruling on the motion until after trial; or (2) hold an evidentiary hearing to further develop the record for purposes of determining whether the government has satisfied its burden under intermediate scrutiny. The court declines to invoke either option. Defendant cited *Chester*, 628 F.3d at 683, to

15

support its evidentiary hearing proposal. In *Chester*, the Fourth Circuit remanded to the district court for an evidentiary hearing because it "[could not] conclude on [the] record that the government ha[d] carried its burden of establishing a reasonable fit between the important object of reducing domestic gun violence and § 922(g)(9)'s permanent disarmament of all domestic-violence misdemeanants." *Id.* The court found that the government had not offered sufficient evidence to establish a substantial relationship between Section 922(g)(9) and an important governmental goal. Such is not the case here as the Government has met its burden. It is also unnecessary to delay ruling on the motion until after trial.

### B.   Vagueness Challenge

Defendant next argues that Sections 922(a)(1)(A) and 921(a)(21)(C) are unconstitutionally vague whether viewed on their face or as applied to him. (ECF No. 39, at 26-27).

First, Defendant contends that he should be permitted to bring a facial challenge because his enumerated rights are implicated. (*Id.* at 29). Defendant again recites Section 922(a)(1)(A) as making it unlawful to engage in the business of dealing in firearms without a license. As set forth above, Section 921(a)(21)(C) defines the term "engaged in the business" as applied to a dealer in firearms:

> as defined in section 921(a)(11)(A), a
> person who devotes time, attention, and
> labor to dealing in firearms as a regular
> course of trade or business with the
> *principal objective of livelihood and profit*
> through the repetitive purchase and resale
> of firearms, but such term shall *not* include
> a person who makes occasional sales,
> exchanges, or purchases of firearms for the
> enhancement of a personal collection or for
> a hobby, or who sells all or part of his
> personal collection of firearms.

18 U.S.C. § 921(a)(21)(C) (emphases added).  Section 921(a)(22)

states that the term "with the principal objective of livelihood

and profit":

> means that the intent underlying the sale or
> disposition of firearms is predominantly one
> of obtaining livelihood and pecuniary gain,
> as opposed to other intents, such as
> improving or liquidating a personal firearms
> collection: *Provided*, That proof of profit
> shall not be required as to a person who
> engages in the regular and repetitive
> purchase and disposition of firearms for
> criminal purposes or terrorism.

18 U.S.C. § 921(a)(22).  Defendant avers that other than the

definition of "with the principal objective of livelihood and

profit," none of the other operative terms are defined.

According to Defendant:

> [t]he statute and regulations thus provide
> no additional guidance for either lawful gun
> owners or the agents tasked with the
> enforcement of these laws.  On their face,
> the prohibition against dealing in firearms
> without a license contains such imprecise
> boundaries that it necessarily encroaches
> upon, and substantially chills, a
> significant amount of constitutionally

> protected     activity,     and     is     thus
> unconstitutional on its face.

(ECF No. 39, at 31).

As a threshold issue, the Government argues that Defendant may not raise a facial challenge to Sections 922(a)(1)(A) and 921(a)(21)(C).   The Fourth Circuit stated in *United States v. Bruffy*, 466 F.App'x 239, 242 (4th Cir. 2012), that "facial vagueness challenges to criminal statutes are allowed only when the statute implicates *First Amendment* rights." (emphasis added); *see also United States v. Klecker*, 348 F.3d 69, 71 (4th Cir. 2003) ("Facial vagueness challenges to criminal statutes are allowed only when the statute implicates First Amendment rights. [] Accordingly, we will only consider the 'as applied' challenge.").

It is doubtful that Defendant can even raise a facial challenge in the context of the Second Amendment.   Defendant argues in his motion that "because *Heller* made repeated analogies to the First Amendment in its Second Amendment analysis, it is appropriate to apply a comparable standard for facial challenges to vague statutes that threaten to chill constitutionally-protected activity."  (ECF No. 39, at 26).   It is far from certain, however, that *Heller* can be read to extend overbreadth facial challenges to statutes outside the First Amendment context, even if *Heller* analogized to First Amendment

18

principles in considering the contours of the Second Amendment.[6]
Moreover, "the Fourth Circuit has made clear that a statute is
not impermissibly vague simply because it does not 'spell out
every possible factual scenario with celestial precision.'"
*Kolbe*, 2014 WL 4243633, at *21 (*quoting United States v. Hager*,
721 F.3d 167, 183 (4th Cir. 2013)); *United States v. King*, 532
F.2d 505, 510 (5th Cir. 1976) ("We are unimpressed [] by
[defendant's] argument that the terms 'dealer' and 'dealing in'
as employed in [Section 922(a)(1)] are too vague and indefinite
to constitute a valid criminal statute, because no standards are
established as to the number of sales, dollar volume thereof, a
fixed or other place of business or number of employees.").
Furthermore, as the Fourth Circuit previously noted, "to prevail
on a facial challenge, [plaintiff] 'must establish that no set
of circumstances exists under which the Act would be valid.  By
finding the statute valid as applied to th[is] plaintiff[], the
facial challenge fails as well.'"  *United States v. Tooley*, 468
F.App'x 357, 359 (4th Cir. 2012) (*quoting Urofsky v. Gilmore*, 216

---

[6] Moreover, in *United States v. Salerno*, 481 U.S. 739, 745
(1987), the Court noted: "[t]he fact that the Bail Reform Act
might operate unconstitutionally under some conceivable set of
circumstances is insufficient to render it wholly invalid, since
we have not recognized an 'overbreadth' doctrine outside the
limited context of the First Amendment."  As the Government also
points out, even in the context of First Amendment challenges,
the vagueness doctrine does not require "perfect clarity and
precise guidance . . . even of regulations that restrict
expressive activity."  *Ward v. Rock Against Racism*, 491 U.S.
781, 794 (1989).

F.3d 401, 427 n.1 (4th Cir. 2000)); *Ezell*, 651 F.3d at 698
(explaining that, in a facial challenge, "[t]he remedy is
necessarily directed at the statute itself and *must* be
injunctive and declaratory; a successful facial attack means the
statute is wholly invalid and cannot be applied to *anyone.*"
(emphasis in original)).  Here too, for the reasons discussed
below, the statutes are valid as applied to Defendant.
Accordingly, Defendant's facial challenge will be rejected.

Defendant next argues that Sections 922(a)(1)(A) and
921(a)(21)(C) are unconstitutional as applied to him because
they do not provide reasonable notice that certain conduct is
prohibited and do not offer sufficient clarity to law
enforcement.  (ECF No. 39, at 35-37).  Defendant contends that
"gun owners are left without sufficiently clear notice of what
conduct is constitutionally protected, and what conduct will
expose them to significant jail time, and law enforcement is
left without any clear guidelines on how to consistently enforce
the law."  (*Id.* at 33).  Defendant argues that the term "engaged
in the business" has been applied inconsistently and
unpredictably by different district courts.  (*Id.* at 34).
According to Defendant, "[t]here is no 'bright-line rule' for
determining whether a person is a 'dealer' or 'collector,' or
whether they are engaged in the sale of firearms for their
'livelihood and profit' or a mere 'hobby.'"  (*Id.* at 34-35).

Defendant maintains that his sale of firearms is different from cases in which courts have found the charged conduct to fall squarely within the statutory prohibition because he engaged in far fewer sales and did not sell to prohibited persons.

Defendant also points to excerpts from the January 2013 ATF brochure. (ECF No. 39-2). The brochure states that "[a]n unlicensed individual may transfer a firearm to another unlicensed individual residing in the same State, provided that he or she has no reason to believe the buyer is prohibited by law from possessing firearms." (*Id.*). Defendant contends that "[n]owhere does the brochure say anything about avoiding repetitive sales, or otherwise suggest that there are constraints on private, intrastate sales." (ECF No. 39, at 35). Defendant maintains that "[w]ith published guidance from the ATF making clear that private, intrastate gun sales are not regulated, and published judicial decisions continuing to cite to standards from superseded regulated statutes, the application of Sections 922(a)(1)(A) and 921(a)(21)(C) to the facts in Mr. Hosford's case" would not provide adequate notice to individuals regarding what conduct is prohibited. (*Id.* at 36).

"Due process requires that a criminal statute provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal, for no man shall be held criminally responsible for conduct which he could not reasonably

understand to be proscribed." *Buckley v. Valeo*, 424 U.S. 1, 77 (1976) (internal quotation marks omitted).  Thus, "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  "[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in [] light of the facts of the case at hand."  *United States v. Cavillo-Rojas*, 510 F.App'x 238, 249 (4th Cir. 2013) (*citing United States v. Mazurie*, 419 U.S. 544, 550 (1975)).  The fact that the legislature might have been able to word the statute in a clearer fashion will not render the law unconstitutional.  *United States v. Powell*, 423 U.S. 87, 93 (1975).  *Hickenlooper*, 2014 WL 3058518, at *20, explained:

> In assessing the sufficiency of statutory language, the court is guided by venerated authority that "we can never expect mathematical certainty from our language" and that a statute's terms may be "marked by flexibility and reasonable breadth, rather than meticulous specificity."  Thus, a statute is not vague if it is clear what the statute as a whole prohibits.

(*quoting Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)).

The statutes at issue are not unconstitutionally vague as applied to Mr. Hosford.  As the Government points out, Sections

921(a)(11) and 921(a)(21)(C) provide narrowing definitions of the terms "dealer" and "engaged in the business." *Nowka*, 2012 WL 2862061, at *4 ("These definitions have the effect of narrowing the class of individuals whose conduct is illegal under the statute. It is not so vague that it is not capable of reasonable interpretation."). Moreover, only willful violations of Section 922(a)(1)(A) are criminalized. *See, e.g., Hickenlooper*, 2014 WL 3058518, at *22 ("[T]he presence of a scienter requirement can save an otherwise vague statute by mitigating a law's vagueness and thus making the law constitutional."). 18 U.S.C. 924(a)(1)(D) provides penalties for any person who "willfully violates" Section 922(a)(1). *See United States v. Bailey,* 123 F.3d 1382, 1392 (11th Cir. 1997) (noting that in determining whether one is engaged in unlawful business of dealing in firearms, finder of fact must examine intent of actor and all circumstances surrounding acts alleged to constitute engaging in business). The indictment alleges that Mr. Hosford conspired to sell firearms to "Person A" in exchange for currency. On its face, the indictment charges Mr. Hosford with knowingly and willfully engaging in the business of dealing in firearms on five occasions without having a license as an importer, manufacturer, and dealer in firearms. (ECF No. 1, at 5). The ATF guidance Defendant cites applies to private occasional sales, which is different from the offense with which

Mr. Hosford is charged (as a dealer in firearms).  Being engaged in the business of dealing in firearms without a license is clearly prohibited under Section 922(a)(1)(A).

Furthermore, in *United States v. Huffman*, 518 F.2d 80, 81 (4th Cir. 1975), the Fourth Circuit rejected an "as-applied" challenge to an earlier, broader version of Section 922(a)(1) which preceded FOPA.  The court held:

> [T]he statute is not vague as applied to Huffman.  The Government proved that [defendant] engaged in more than a dozen transactions in the course of a few months. He frequently built firearms [] and exchanged them for other weapons which he subsequently sold or traded.

*Id.*  The court finds persuasive the Government's argument that the Fourth Circuit's "rejection of a challenge to a broader version of [Section 922(a)(1)(A)] certainly has relevance to Hosford's challenge to the current, narrower version of the statute."  (ECF No. 45, at 25).  Courts have considered and rejected similar void-for-vagueness, "as-applied" challenges. For instance, in *United States v. Shipley*, 546 F.App'x 450, 456 (5th Cir. 2013), the court commented:

> Although it may be true that there is a degree of ambiguity in locating precisely the border between, on the one hand, an unlicensed dealer that unlawfully engages in the regular business of dealing firearms and, on the other hand, an unlicensed hobbyist that lawfully engages in periodic sales, the jury here found Shipley guilty of making, over a number of years, numerous

24

> repetitive sales in quick succession,
> sometimes to repeat customers, and such
> conduct is unquestionably prohibited by the
> statutes' text. Shipley's void-for-vagueness
> claim is therefore without merit.

*See also United States v. Strunk*, 551 F.App'x 245, 246 (5th Cir.
2014) (concluding that a defendant who, "without being licensed,
sold firearms entrusted to him by others for the purpose of
sale," could not attack Section 922(a)(1)(A) on the basis that
it is vague, because "[s]uch conduct is unquestionably
prohibited by the legislation's text").

As an alternative to dismissing the indictment based on Mr.
Hosford's "as-applied" challenge, Defendant requests that the
court defer ruling on the motion until evidence can be
established at trial. (ECF No. 39, at 40). As the Government
points out, the indictment plainly lays out its basis for the
charge and what it intends to prove at trial. (ECF No. 45, at
27 n.10). The statutes are not vague as applied to Mr. Hosford
considering the conduct with which he has been charged. Thus,
it is not necessary to pursue Defendant's alternative option.

## C. Commerce Clause

Finally, Defendant argues that "even if the conduct in this
case could conceivably be considered 'commercial,' it has
nothing to do with interstate commerce." (ECF No. 39, at 45).
According to Defendant, the facts as alleged by the Government
merely "show a private intrastate transfer between two non-

prohibited persons." (*Id.*). Defendant contends that Section 922(a)(1) requires that the sale of firearms affect interstate commerce; "[t]his missing interstate nexus allows Congress to regulate both interstate and intrastate commerce, exceeding the scope of the Commerce Clause." (*Id.* at 46).

Defendant relies on *United States v. Lopez*, 514 U.S. 549 (1995). In *Lopez*, the Supreme Court held that the Gun-Free School Zones Act of 1990, 18 U.S.C. 922(g)(1)(A), which contained no interstate commerce element, was beyond Congress's Commerce Clause powers because gun possession in a local school zone did not qualify as economic activity that substantially affected interstate commerce. *Id.* at 561-62. As the Government points out, however, "[i]n contrast to the mere *possession* of firearms near schools at issue in *Lopez*, the nationwide *business* of dealing in firearms that is regulated by Section 922(a)(1)(A) *does* substantially affect interstate commerce." (ECF No. 45, at 28-29) (emphases in original); *United States v. Torres*, No. CR 09-01733-TUC-JMR (JCG), 2010 WL 3190659, at *11 (D.Ariz. June 21, 2010) ("[A]n interstate commerce nexus is implicit in statutes regulating the sale of firearms, because firearms transactions are an economic activity that substantially affect interstate commerce."). Article I, Section 8 of the U.S. Constitution authorizes Congress to make laws as necessary to regulate commerce among the States provided it has a rational

basis for concluding that the prohibited activities, "taken in the aggregate, substantially affect interstate commerce." *Gonzales v. Raich*, 545 U.S. 1, 22 (2005). The Commerce Clause analysis does not focus on whether particular conduct under the statute had an impact on interstate commerce, but rather on whether "the class of acts proscribed has such an impact." *United States v. Gibert*, 677 F.3d 613, 627 (4th Cir. 2012); *Raich*, 545 U.S. at 17 ("[W]hen a general regulatory statute bears a substantial relation to commerce, the *de minimis* character of individual instances arising under that statute is of no consequence.").

Here, the sale of firearms quite obviously has a substantial effect on interstate commerce. *See, e.g., United States v. Bledsoe*, Crim. No. SA-08-CR-13(2)-XR, 2008 WL 744718, at *2 (W.D.Tex. Mar. 20, 2008) ("Well-documented congressional findings indicate that the market for firearms is a national market. Under these circumstances, the aggregate of intrastate firearms transactions has a substantial affect [] on interstate commerce."[7] (*quoting United States v. Meienberg*, 263 F.3d 1177, 1182 (10th Cir. 2001)); *United States v. Hornbeck*, 489 F.2d 1325, 1326 (7th Cir. 1973) ("[D]efendant's constitutional challenge to section 922(a)(1) must fail for it is well established that

---

[7] Notably, in his reply brief, Defendant does *not* respond to the arguments made by the Government in its opposition regarding the Commerce Clause.

Congress may impose criminal sanctions for the purpose of regulating purely intrastate activities which substantially affect interstate commerce."). Other courts have consistently rejected challenges to Section 922(a)(1)(a) premised on a violation of the Commerce Clause. *See, e.g., King*, 532 F.2d at 510 (holding that no interstate nexus was required in Section 922(a)(1)); *United States v. Ibarra*, 472 F.App'x 819 (9th Cir. 2012) ("[T]he interstate commerce nexus is not an element required to be charged for violation of 18 U.S.C. § 922(a)(1)(A)"). Defendant's arguments that Section 922(a)(1)(A) exceeds the scope of the Commerce Clause are unavailing.

## III. Conclusion

For the foregoing reasons, Defendant's motion to dismiss the indictment will be denied. A separate order will follow.

                          /s/
            _____
            DEBORAH K. CHASANOW
            United States District Judge